KATHY E. MOUNT, SBN 104736
TERRY ROEMER, SBN 151894
MEYERS, NAVE, RIBACK, SILVER & WILSON
555 12th Street, Suite 1500
Oakland, CA  94607
kmount@meyersnave.com
Phone:  (510) 808-2000
Facsimile:  (510) 444-1108

Attorneys for Defendants
City of Pittsburg, Chief of Police Aaron Baker,
Capt. William Zbacnik, Lt. Michael Barbanica,
Lt. William "Brian" Addington, Lt. Wade Derby

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RON HUPPERT and JAVIER SALGADO, | Case No.: C 05-01433 JL |
| Plaintiffs, | **SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS CITY OF PITTSBURG, AARON BAKER, WILLIAM ZBACNIK, MICHAEL BARBANICA, WILLIAM ADDINGTON AND WADE DERBY'S MOTION FOR SUMMARY JUDMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF CLAIMS ASSERTED BY PLAINTIFF HUPPERT** |
| v. | |
| CITY OF PITTSBURG, CHIEF OF POLICE AARON BAKER, CAPT. WILLIAM ZBACNIK, LT. MICHAEL BARBANICA, LT. WILLIAM "BRIAN" ADDINGTON, LT. WADE DERBY, and DOES 1-40, | |
| Defendants. | |
| | DATE:      August 2, 2006<br>TIME:      9:30 a.m.<br>DEPT:     Courtroom F, 15th Floor |
| | **Complaint Filed:  April 7, 2005** |

Defendants City of Pittsburg, Chief of Police Aaron Baker, William Zbacnik, Michael Barbanica, William Addington, and Wade Derby submit the following statement of undisputed material facts, together with references to supporting evidence, in support of their motion for summary judgment or, in the alternative, summary adjudication of claims asserted by Plaintiff Ron Huppert.

Separate Statement of Undisputed Material Facts in
Support of Defendants' Summary Judgment Motion of
Claims Asserted by Huppert

1

Huppert/Salgado v. City of Pittsburg, et al.
Case No. C 05-01433 SBA.

| UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 1. Huppert was initially employed by the City of Pittsburg as a police officer on January 25, 1991. | 1. Declaration of Marc Fox ("Fox Decl.") ¶ 2<br><br>**NOT DISPUTED BY PLAINTIFF** |
| 2. Huppert served as a police officer during his entire period of employment with the City of Pittsburg. | 2. Fox Decl. ¶ 2; Declaration of Kathy Mount ("Mount Decl."), Exhibit C (Huppert's Rev. Supp. Resp. to Req. for Admissions, No. 9)<br><br>**NOT DISPUTED BY PLAINTIFF** |
| 3. On August 27, 2004, Huppert was placed off work by his physician and thereafter did not return to work for the City. | 3. Fox Decl. ¶ 3<br><br>**DISPUTED BY PLAINTIFF** |
| 4. From August 2004 to April 2005, Huppert was paid full salary and benefits by the City pursuant to Labor Code section 4850. | 4. Fox Decl. ¶ 4<br><br>**NOT DISPUTED BY PLAINTIFF** |
| 5. In a written determination dated April 8, 2005, the City Manager determined, on behalf of the City, that Huppert was incapacitated for the performance of his duties as a police officer. | 5. Fox Decl. ¶ 5, Exhibit A<br><br>**NOT DISPUTED BY PLAINTIFF** |
| 6. Huppert began receiving disability pension payments retroactive to April 7, 2005, in the monthly amount of $3358.25. He continues to receive industrial disability retirement benefits from CalPERS, which are tax-free. | 6. Fox Decl. ¶ 6; Mount Decl., Exhibit A (Huppert dep. Tr. 400:15-401:1); Exhibit C (Huppert's Rev. Supp. Resp. to Req. for Admissions, No. 1)<br><br>**NOT DISPUTED BY PLAINTIFF** |
| 7. Huppert's disability retirement will continue for as long as he is disabled from performing the duties of police officer. | 7. Mount Decl., Exhibit C (Huppert's Rev. Supp. Resp. to Req. for Admissions, No. 2)<br><br>**NOT DISPUTED BY PLAINTIFF** |
| 8. Huppert's physician has stated that Huppert's inability to perform the duties of a police officer is a permanent condition. | 8. Mount Decl., Exhibit C (Huppert's Rev. Supp. Resp. to Req. for Admissions, No. 4)<br><br>**DISPUTED BY PLAINTIFF** |

| | |
|---|---|
| 9. Huppert is currently physically incapable of performing the duties of police officer. | 9. Mount Decl., Exhibit A (Huppert Depo. Tr. 307:23-308:1); Ex. C (Huppert's Rev. Supp. Resp. to Req. for Admissions, No. 3)<br><br>**NOT DISPUTED BY PLAINTIFF** |
| 10. Huppert's father is Austrian and his mother is Panamanian.  Huppert speaks both German and some Spanish. | 10. Mount Decl., Exhibit A (Huppert Depo. Tr. 227:8-228:7)<br><br>**NOT DISPUTED BY PLAINTIFF** |
| 11. During the time that Huppert was employed by the City, neither Chief Baker nor Captain Zbacnik were aware that he was of Hispanic or Latin descent. | 11. Declaration of Aaron Baker ("Baker Decl.") ¶ 3; Declaration of William Zbacnik ("Zbacnik Decl.") ¶ 8.; Mount Decl., Exhibit A (Huppert Depo. Tr. 161:14-25)<br><br>**DISPUTED BY PLAINTIFF** |
| 12. During the period Huppert was employed by the City of Pittsburg, he was never personally subjected to derogatory comments which were based on his ethnicity or any ethnic slurs. | 12. Mount Decl., Exhibit A (Huppert Depo. Tr. 199:6-15; 196:16-22; 171:16-25; 169:7-22)<br><br>**DISPUTED BY PLAINTIFF** |
| 13. In 1996, Zbacnik assigned Huppert to investigate a carjacking incident. | 13. Zbacnik Decl. ¶ 4, Mount Decl., Exhibit A (Huppert Depo. Tr. 366:25-367: 2)<br><br>**NOT DISPUTED BY PLAINTIFF** |
| 14. On or about August 28, 1996, Huppert provided a memo to Zbacnik in connection with the carjacking investigation in which Huppert reported a citizen's complaint about Sergeant Kevin Keeler. | 14. Zbacnik Decl.4, Exhibit A; Mount Decl., Exhibit A (Huppert Depo. Tr. 365:7-366: 5)<br><br>**NOT DISPUTED BY PLAINTIFF** |
| 15. In September 1996, Defendant Baker was assigned by Chief Casey to conduct an investigation into allegations that Huppert failed to report to management racial slurs made by Sergeant Kevin Keeler. | 15. Baker Decl. ¶ 4,5, Exhibit A.<br><br>**NOT DISPUTED BY PLAINTIFF** |

Separate Statement of Undisputed Material Facts in Support of Defendants' Summary Judgment Motion of Claims Asserted by Huppert

3

*Huppert/Salgado v. City of Pittsburg, et al.*
Case No. C 05-01433 SBA.

| | |
|---|---|
| 16. On or about November 14, 1996, Chief Baker issued a nondisciplinary "letter of advisement" to Huppert regarding his failure to report alleged racial slurs made by Sergeant Kevin Keeler. | 16. Baker Decl. ¶ 5, Exhibit A<br><br>**NOT DISPUTED BY PLAINTIFF** |
| 17. In response to that letter of advisement, Huppert sent Chief Baker a memo, dated November 19, 1996, in which he disputed statements in the letter of advisement but did not claim that he ever complained to management that Sergeant Keeler had made racial slurs. | 17. Baker Decl. ¶ 6, Exhibit B<br><br>**NOT DISPUTED BY PLAINTIFF** |
| 18. Huppert has never come forward to Chief Baker or any other member of police department management with a complaint of discrimination or retaliation, either related to himself or anyone else, while he was actually working for the City. | 18. Baker Decl. ¶ 7; Mount Decl., Exhibit A (Huppert Dep. Tr. 500:25-501:24<br><br>**DISPUTED BY PLAINTIFF** |
| 19. In 1996, Huppert was assigned, as part of his duties as a police officer, to assist the District Attorney in an investigation into alleged stealing and kickbacks at the City's Public Works Department.  All reports and information Huppert provided to the Police Department regarding that investigation were pursuant to his official responsibilities as a police officer. | 19. Zbacnik Decl. ¶ 3; Baker Decl. ¶ 9; Mount Decl., Exhibit A (Huppert Dep. Tr. 27:1-20; 127:19-24)<br><br>**NOT DISPUTED BY PLAINTIFF** |
| 20. In or about September - October 2001, Chief Baker assigned Huppert to investigate allegations of wrongdoing by police officers at the City golf course.  All reports and information Huppert provided to the Police Chief and City Manager regarding that investigation were pursuant to his official responsibilities as a police officer. | 20. Baker Decl.¶ 8; Mount Decl., Exhibit A (Huppert Depo. Tr. 242:2-14)<br><br>**NOT DISPUTED BY PLAINTIFF** |
| 21. In October 2001, Huppert submitted reports of the findings in connection with the golf course investigation to Chief Baker. | 21. Baker Decl.¶ 8; Exhibits C, D, E<br><br>**NOT DISPUTED BY PLAINTIFF** |
| 22. In or about early 2004, Chief Baker, Captain Zbacnik and other members of the Police Department were subpoenaed to testify before the Contra Costa County Civil Grand | 22. Baker Decl. ¶ 10; Zbacnik ¶ 5<br><br>**NOT DISPUTED BY PLAINTIFF** |

Separate Statement of Undisputed Material Facts in<br>Support of Defendants' Summary Judgment Motion of<br>Claims Asserted by Huppert

4

*Huppert/Salgado v. City of Pittsburg, et al.*<br>Case No. C 05-01433 SBA.

Jury regarding operations of Police Department, including hiring and selection processes.  Both the Chief and Zbacnik testified before the Grand Jury on this occasion.  At least ten other members of the police department (including police officers, sergeants, captains and non-sworn personnel) were subpoenaed to testify as well.

| | |
|---|---|
| 23. On February 18, 2004, Huppert testified before the Grand Jury regarding conduct in the Police Department, pursuant to subpoena.  In doing so, he was acting pursuant to his official responsibilities as a police officer.  His testimony is secret. | 23. Mount Decl., Exhibit A (Huppert Depo. Tr.  207:22-208:13 )<br><br>**NOT DISPUTED BY PLAINTIFF** |
| 24. Before this lawsuit was initiated, Chief Baker was not aware that Huppert had testified before the Grand Jury in 2004 regarding Police Department issues. | 24. Baker Decl.¶ 10<br><br>**DISPUTED BY PLAINTIFF** |
| 25. Zbacnik was never aware that Huppert testified before the grand jury regarding misconduct in the police department. | 25. Zbacnik Decl. ¶ 6<br><br>**DISPUTED BY PLAINTIFF** |
| 26. Neither Baker nor Zbacnik have ever been informed of the substance of any such Grand Jury testimony by Huppert. | 26. Baker Decl. ¶ 10; Zbacnik Decl. ¶ 6<br><br>**NOT DISPUTED BY PLAINTIFF** |
| 27. During the time Huppert was employed by the City, neither Chief Baker nor Captain Zbacnik were ever aware that Huppert had cooperated with outside law enforcement agencies in any investigations into allegations of misconduct at the Pittsburg Police Department. | 27. Baker Decl. ¶ 11; Zbacnik Decl. ¶ 7<br><br>**DISPUTED BY PLAINTIFF** |
| 28. In or about 2004, Chief Baker was informed by Lieutenant Derby that Huppert had asked to be transferred from the gang unit to the investigations unit. | 28. Baker Decl. ¶ 12<br><br>**DISPUTED BY PLAINTIFF** |
| 29. Chief Baker made the decision to transfer Huppert from gang investigations to identity theft, fraud and forgery investigations. The Chief believed the Police Department needed Huppert's expertise in handling these issues.  The Chief did not view this | 29. Baker Decl. ¶12<br><br>**DISPUTED BY PLAINTIFF** |

Separate Statement of Undisputed Material Facts in Support of Defendants' Summary Judgment Motion of Claims Asserted by Huppert

5

*Huppert/Salgado v. City of Pittsburg, et al.*
Case No. C 05-01433 SBA.

| | |
|---|---|
| transfer as having an adverse effect on Huppert's work conditions. | |
| 30. During his period of employment with the City, Huppert has never been subjected to disciplinary action, never demoted, and never suffered a loss of pay or benefits | 30. Mount Decl., Exhibit A (Huppert Depo. Tr. 548:17-549:3; 549:19-550:11); Fox Decl. ¶ 3<br><br>**DISPUTED BY PLAINTIFF** |
| 31. Huppert admits that the City is immune from a common law action for negligence. | 31. Mount Decl. ¶ 4; Exhibit C (Huppert's Rev. Supp. Resp. to Req. for Admissions, No. 8)<br><br>**NOT DISPUTED BY PLAINTIFF** |
| 32. Huppert admits that the City is immune from a common law action for intentional infliction of emotional distress. | 32. Mount Decl. ¶ 4; Exhibit C (Huppert's Rev. Supp. Resp. to Req. for Admissions, No. 7)<br><br>**NOT DISPUTED BY PLAINTIFF** |

Dated:  June 28, 2006                    MEYERS, NAVE, RIBACK, SILVER & WILSON


By___/S/___KATHY E. MOUNT  06/28/2006___
          Kathy E. Mount
          Attorneys for Defendants

831796v1; 1029.4005

Separate Statement of Undisputed Material Facts in
Support of Defendants' Summary Judgment Motion of          6
Claims Asserted by Huppert

*Huppert/Salgado v. City of Pittsburg, et al.*
Case No. C 05-01433 SBA